208 P.2d 309

**WALTON et ux. v. CITY OF PHOENIX.**

**No. 5119.**

Supreme Court of Arizona.

July 5, 1949.

Croaff & Croaff, of Phoenix, for appellants.

Jack Choisser, City Atty., Jennings, Strouss, Salmon & Trask, J. A. Riggins, Jr., Henry S. Stevens, Rex H. Moore, all of Phoenix, for appellee.

UDALL, Justice.

This is an appeal from a judgment in favor of the plaintiff (appellee) City of Phoenix, acting through its Housing Authority, which found the defendants (appellants), Alexander Walton et ux., guilty of forcible detainer and ordered their eviction. The parties will be hereinafter referred to as plaintiff and defendants. To aid in understanding and settling the problems presented we recite the pertinent legislative history of the acts involved as well as stating the facts in the instant case.

The legislature of Arizona enacted the "Municipal Housing Law" Laws 1939, Ch. 82, which now appears as Article 16, A.C.A. 1939, for the purpose of permitting cities and towns of the state to take advantage of the "United States Housing Act of 1937", 42 U.S.C.A. §§ 1401–1430 inclusive. The plaintiff acting pursuant to the aforementioned act created by ordinance the Housing Authority of the City of Phoenix

giving to such agency certain broad general powers. In the case of Humphrey v. City of Phoenix, 55 Ariz. 374, 102 P.2d 82, we upheld the constitutionality of the Arizona Municipal Housing Law, as well as the ordinances of the City of Phoenix creating its own Housing Authority.

Apartment 147 of the Matthew Henson Homes, which is one of three Federal Housing Projects owned and operated by the plaintiff under this authority, was occupied by the defendants for some six years prior to this action. The lease called for a rental of $30.00 per month for this seven room apartment and was on a month to month renewal basis at the option of the Housing Authority. The Commissioners of the plaintiff Housing Authority had some difficulty with their tenants and hence on January 10, 1948, the following resolution was adopted, viz:

"There followed a discussion of undesirable tenants in the Projects. Motion was duly made, seconded and unanimously carried that the Executive Director be authorized to use his judgment in the eviction of undesirable tenants since, in the opinion of the Authority, other housing is available."

Thereafter on February 10, 1948, plaintiff's attorney gave notice of termination of defendants' lease as of March 1, 1948. These tenants failing to vacate within the time specified, a complaint in forcible entry and detainer was filed against them. Trial was had to the court sitting without a jury at the conclusion of which the judgment now appealed from was entered. Upon the giving of a supersedeas bond in the sum of $500 an order was entered staying the writ of restitution.

One of the issues raised by the appeal was that the Federal Rent Control Act, 50 U.S.C.A.Appendix, § 901 et seq., governed the plaintiff in this eviction action. This contention was waived by defendant at the time of oral argument as the Phoenix area had been decontrolled in the interim. Plaintiff made no attempt to comply with this act in that neither the notice to vacate, the complaint, nor the proof put forth any grounds for terminating the tenancy.

This leaves for determination only the question as to whether the plaintiff had the right to terminate defendants' tenancy by giving a ten day notice (section 71-304 (b), A.C.A.1939) and to invoke the procedural remedies in forcible entry and detainer provided for under sections 27-1201 et seq., A.C.A.1939. It would seem to be defendants' contention that these state statutes have no application to other than private landlords and that insofar as the plaintiff is concerned the whole matter is governed and controlled by the United States Housing Act of 1937 as amended. Defendants however fail to direct our attention to any specific provisions of the Act which support this theory. As a matter of fact, a reading of the entire act, with its amendments, as well as the related Federal Acts on National Housing, Title 50 U.S.C.A. War Ap-

pendix, leads one irresistible to the opposite conclusion. As indicative of the attitude of Congress on this matter we quote from certain of these acts, viz:

Sec. 1413(b), Ch. 8, Title 42 U.S.C.A.

"Civil and criminal jurisdiction of States. (b) The acquisition by the Authority of any real property pursuant to this chapter shall not deprive any State or political subdivision thereof of its civil and criminal jurisdiction in and over such property, or impair the civil rights under the State or local law of the inhabitants on such property; and, insofar as any such jurisdiction may have been taken away or any such rights impaired by reason of the acquisition of any property transferred to the Authority pursuant to section 1404(d) of this title, such jurisdiction and such rights are hereby fully restored."

Public Law 129, 80th Congress, Ch. 163, 1st Session, appearing in Title 50 U.S.C.A. War Appendix § 1899(b), approved June 30, 1947:

"(b) Notwithstanding any other provision of this Act, the United States or any State or local public agency may maintain an action or proceeding to recover possession of any housing accommodations operated by it where such action or proceeding is authorized by the statute or regulations under which such accommodations are administered: * * *."

A month later on July 31, 1947, this latter act was amended as follows:

"1413a. Recovery of possession of housing accommodations

"The United States or any State or local public agency assisted by Federal funds made available with respect to housing *shall continue to have the right to maintain an action or proceeding to recover possession of any housing accommodations * * *.*" (Emphasis supplied) 42 U.S.C.A. § 1413a.

This phraseology seems highly significant. It is tantamount to the Congress saying that local housing projects such as the Housing Authority of the City of Phoenix have the right to maintain an action to recover possession of its housing units when sanctioned by state statutes. See San Diego State College Foundation v. Hasty, Cal. Super., 202 P.2d 868.

We next examine our statutes to see what powers are expressly granted by the legislature in the "Municipal Housing Law". Article 16, supra, section 16-1604, A.C.A.1939, reads in part:

"Powers.—Every City and town in addition to other powers conferred by this act, shall have power:

"1. Within its area of operation: To prepare, carry out, acquire, purchase, lease, construct, reconstruct, improve, alter, extend or repair any housing project or projects or any part thereof, and to operate and maintain such project or projects;

* * * * * *

"3. To: (a) Lease or rent any dwellings, houses, accommodations, lands, buildings, structures or facilities embraced in any housing project and (subject to the limitations contained in this act) to establish and revise the rents or charges therefor; (b) * * *."

and the following section, 16-1605, A.C.A. 1939, which authorizes the creation of a municipal housing authority, provides:

" * * * The city or town may delegate to such authority the power to construct, maintain, operate and manage any housing project or projects of such city or town * * *."

Section 16-1622, A.C.A.1939 further provides that:

"The powers conferred by this act shall be in addition and supplemental to the powers conferred by any other law."

 It is a well settled principle that express powers carry with them all the implied power necessary to make them effective. Speaking relative to the matter of the powers of municipal corporations, the court stated in the case of Harrison v. Hartford Fire Insurance Co., D.C., 55 F.Supp. 241, 243, that such powers

" * * * are to be construed so as to carry into effect every power clearly intended to be conferred, and every power necessary to be implied for the complete exercise of those granted."

See also O'Neil v. Goldenetz, 53 Ariz. 51, 85 P.2d 705; Town of Holbrook v. Nutting, 57 Ariz. 360, 114 P.2d 226; Egan v. City and County of San Francisco, 165 Cal. 576, 133 P. 294, Ann.Cas.1915A, 754; Seafeldt v. Port of Astoria, 141 Or. 418, 16 P. 2d 943; City of Bloomington v. Wirrick, 381 Ill. 347, 45 N.E.2d 852, certiorari denied 319 U.S. 756, 63 S.Ct. 1175, 87 L.Ed. 1709; and Housing Authority of Gallatin County, et al. v. Church of God, et al., 401 Ill. 100, 81 N.E.2d 500.

 It appears to us that the clear import and intent of the Arizona Municipal Housing Law, Art. 16, supra, was to give to the plaintiff, or similar housing authorities created thereunder, full power and authority to do all acts necessary to operate such low rent housing facilities subject of course to the specific restrictions therein contained. The plaintiff's right to secure possession of any given unit of its projects is essential to the performance of its duties and obligations created under the Act and such right although not expressly granted is necessarily implied from the express powers given by the statutes heretofore quoted. For example, the power to lease carries with it the implied power to terminate the lease and the powers to operate and manage carry with them the implied power to take every step necessary to properly manage and operate including the power to evict. It would certainly create an anomalous situation if a person once obtaining possession had a continuing and indefinite right of tenure. To so construe the statute would be to rule that a person after becom-

ing a tenant need not care for the premises and need not do anything except in accordance with his own will and conscience, thus leaving the plaintiff powerless to perform its functions under the Act and in effect negativing the purpose and the expressed intention of the legislature.

The duty of choosing the tenants from those who qualify under the Act is that of the local Housing Authority and such agency just as any private landlord may impose reasonable restrictions on the use of the privilege so granted; and therefore, must have a right to enforce such restrictions by using eviction as the penalty for any violation of them, if it becomes necessary. Brand v. Chicago Housing Authority, 7 Cir., 120 F.2d 786. The clear intent of Section 16-1622, supra, is to give this agency the benefit of all statutory remedies, in effect at the time of enactment and thereafter, which would aid such agencies in the performance of their duties.

We hold that the plaintiff may in its sound discretion act as any other landlord in the preservation and maintenance of the property under its control; therefore, it had the right to terminate defendants' tenancy and invoke the statutory remedy of forcible detainer to dispossess them. Judgment affirmed.

LA PRADE, C. J., and STANFORD, PHELPS, and DE CONCINI, JJ., concur.