## Lancaster Housing Authority *v.* Gardner, Appellant.

503

504

Argued December 14, 1967. Before WATKINS, MONT-GOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ. (ERVIN, P. J., and WRIGHT, J., absent).

*Daniel H. Shertzer,* for appellant.

*Alfred C. Alspach,* with him *Alspach and Ryder,* for appellee.

OPINION PER CURIAM, January 16, 1968:
Order affirmed. See *Pittsburgh Housing Authority v. Turner,* 201 Pa. Superior Ct. 62, 191 A. 2d 869 (1963)..

―――――

OPINION BY MONTGOMERY, J., SUPPLEMENTING PER CURIAM ORDER FILED JANUARY 16, 1968:
This appeal was argued before us at our December Session (1967) and disposed of by a per curiam order of affirmance filed January 16, 1968, on the authority of *Pittsburgh Housing Authority v. Turner,* 201 Pa. Superior Ct. 62, 191 A. 2d 869 (1963). Judge ERVIN, then President Judge, and Judge WRIGHT, now President

Judge, took no part in the consideration or decision of the case. Subsequently, appellant June Gardner presented to us a petition for reargument which will be refused. However, we deem it necessary to elaborate on the reason given for our original decision.

This appeal comes to us from an order of the Common Pleas Court of Lancaster County refusing to grant a rule to show cause why a confessed judgment in ejectment should not be opened for the purpose of permitting appellant to enter a defense thereto, or in the alternative, why the judgment should not be stricken. No answer was filed to the petition. No opinion has been filed by the lower court in support of its order of refusal, but it is appellee's contention that the petition is insufficient to justify the issuance of a rule. It argues that the petition fails to allege any facts which indicate a defense to the judgment or a sufficient reason for it being stricken.

The judgment was entered pursuant to a warrant contained in a lease wherein the appellee was the lessor and the appellant the lessee; and which covered premise known as Unit 174-2 in a low rent housing project at 536 South Ann Street in the City of Lancaster. The lease was written on a month-to-month basis with a provision for termination by either party on a prior thirty-day notice of intention to terminate. The affidavit of default attached to the confession of judgment was made by Howard R. Riegert, the Executive Director of Lancaster Housing Authority, appellee, and stated that notice had been given to appellant-tenant on June 19, 1967 to quit and deliver up possession of the premises covered by the lease by July 31, 1967, and that said tenant had refused to remove therefrom on or after that date. No reason for terminating the lease is stated in the affidavit.

Appellant's petition to open or strike the judgment revealed the foregoing facts, and in addition alleged

that she was advised she might have a hearing before the Authority, but was not advised she might have legal counsel present at said hearing; that no hearing was held, except that on or about July 13, 1967 she met with Mr. Riegert, the Executive Director previously named, and was informed by him that he had examined her premises and found them to be "filthy", which she denied to him, and in her petition. She alleged further that there are no standards for housekeeping set up by the Authority nor any regulations which permit the eviction of tenants on the ground of poor housekeeping, and therefore the said action of the Authority in attempting to evict her was capricious, arbitrary, illegal and in violation of the regulations of the Authority, the laws of the Commonwealth of Pennsylvania and the United States of America, and in violation of her rights under both the Constitution of Pennsylvania and the Constitution of the United States.

Our original order of affirmance was predicated on our holding in the *Turner* case that tenants in public housing projects have no vested right in their tenancy and although they cannot be compelled to comply with unconstitutional requirements as a condition of continued occupancy, they are subject to the same laws that govern landlords and tenants generally. We arrived at this conclusion for the reason that the Pennsylvania Housing Authority Law, Act of May 28, 1937, P. L. 955, 35 P.S. §1541 et seq., gives such authorities broad powers to promote the declared policy of that law, which was to promote the health and welfare of the inhabitants thereof; and in the absence of proof of any arbitrary, capricious or discriminating acts on their part it would be presumed they were performing properly their delegated powers and duties.

Recognizing the right of termination on notice in such cases and the dissatisfaction that arises when

that right is exercised, the Department of Housing and Urban Development on February 7, 1967, issued a directive to local housing authorities, which is discussed in *Thorpe v. Housing Authority of the City of Durham,* 386 U.S. 670, 87 S. Ct. 1244, 18 L. Ed. 2d 394 (1967). That directive reads in part as follows: "Since this is a federally assisted program, we believe it is essential that no tenant be given notice to vacate without being told by the Local Authority, in a private conference or other appropriate manner, the reasons for the eviction, and given an opportunity to make such reply or explanation as he may wish." This directive also requires that the assigned reason be recorded for future references by it.

This directive does not enlarge the rights of tenants or curtail those of the Authority-landlord. It merely assures tenants that their continued occupancy is not dependent upon compliance with unconstitutional requirements as in the cases to which appellant's counsel refers in his brief, namely, organizational activities among tenants, having illegitimate children, etc.

In *Thorpe,* the United States Supreme Court did not decide any constitutional issues but remanded the case for further proceedings as might be appropriate in the light of the Department of Housing and Urban Development circular. It did not decide that a tenant might legally contest the reason adopted by the Authority for terminating the lease, nor do we find in any other case a holding that a low income housing tenant has any more rights than any other tenant, except, as previously stated, the right to resist unconstitutional requirements as a condition of continued occupancy.

This lease provides in various paragraphs that the tenant shall keep the premises in a clean and sanitary condition, use trash and garbage cans for refuse, avoid

overflowing wash basins, toilets, avoid nuisances, etc. By her petition she admits she was informed that the reason she was being evicted was her carelessness in maintaining the premises and that she was given an opportunity to discuss the complaint with the Executive Director of the Authority. This was a sufficient compliance with the directive of the Department of Housing and Urban Development and requires no remand of the case for the purpose of compliance as was done in *Thorpe*. Therefore, appellee was justified in exercising its rights under the lease to terminate it on thirty days notice.

Again referring to *Thorpe*, we find in the concurring opinion of Mr. Justice DOUGLAS recognition of the power of a public housing authority to evict a tenant for "destroying the fixtures, defacing the walls, disturbing other tenants . . . and for a number of other reasons which impair the successful operation of the housing project." Mr. Justice DOUGLAS was in favor of a remand in that case for the purpose of determining the reason or cause of that tenant's eviction. In our present case, the cause is admitted by petitioner, i.e., the keeping of a "filthy" house. Although that fact is disputed, the termination of the lease and the subsequent eviction, regardless of the dispute, do not amount to a denial of a constitutional right, as found in other cases. In the ordinary landlord and tenant case the right of a landlord to evict a tenant after termination of a lease is not a subject for litigation. A tenant in a low rent housing project is in no better position so long as basic constitutional rights are not involved, as previously stated, and the tenant is advised of the cause for the termination. There is no constitutional right violated when, under the terms of the lease in such cases, the landlord-Authority is given the privilege of terminating the tenant's right of occupancy if, in its opinion, the tenant is not properly pre-

serving the leasehold. As we pointed out in *Turner* and as indicated by Mr. Justice DOUGLAS in *Thorpe,* the law places some discretion in public housing Authorities in the operation of such projects. Otherwise the tenant could be evicted only after long delays resulting from litigating the soundest reason such landlord might have for refusing to renew such a lease. This situation would create an unreasonable hardship on the Authority in the operation of the project as well as on other tenants therein.

This is the case of a refusal to renew a lease which is within the discretion of the landlord, except as previously stated, and not the case of an eviction for a violation of the lease which might be subject to dispute. The lease is explicit that it is terminable on notice, and such tenants have no rights, constitutional or otherwise, to vary its terms. The sanctity of contract is still recognized in law.

In conclusion, we fail to find any facts alleged in appellant's petition to open the judgment which are sufficient to justify it being opened or stricken. Therefore the lower court did not abuse its discretion when it refused to issue a rule to show cause thereon.

The petition for reargument is refused.